Mr. Justice Merrick
delivered the opinion of the Court:
This suit was brought to recover damages for crushing the foot of the defendant, at a wharf on the Potomac River, in effecting a landing of the steamer John W. Thompson, in so negligent a maimer that a portion of the wharf was torn up and broken, and the foot of the plaintiff was caught and crushed among the broken timbers. The plaintiff was the owner of the wharf, and was in the habit of attending to the duties of a wharfinger.
Testimony was given of the situation and condition of *44 the wharf, of the manner in which the boat landed, and ought to have landed, and of the position of the plaintiff on the wharf at the moment of the accident and prior thereto, and of all that was done and said on the occasion, and of the respective practice and duties of the steamboat officers and of the plaintiff, in effecting landings and in taking off and putting freight on the steamer. As in most such cases the testimony was ' contradictory as to the main facts, and as to whether the accident was occasioned by the negligence of the defendant’s agents, by the fault of the plaintiff, or by the concurrent negligence of both parties.
In the progress of the cause several nautical men were examined in respect to the situation of the wharf in question, and as to the manner in which the approach to a wharf ought to be made, and how the particular landing was made, and as to the duties of a wharfinger; and then one of these mariners was asked if, in his judgment, a position within two or three feet from the fender piles of a wharf constructed as was the Shamrock wharf was a reasonably safe place for a wharfinger to stand when a boat was approaching, in order to take off freight or to make a landing. Objection was made to the question, which was sustained by the Court because the mariner was not shown to be a wharfinger; and to the refusal to admit the opinion of the witness the defendant excepted. Whether the answer would have been favorable or not to the defendant is not averred, nor shown anywhere in the exception; and this Court is, therefore, not advised by the record whether the defendant sustained any damage by the refusal of the Court to allow the question. This defect in the statement would of itself be enough to justify the Court in declining to award a new trial upon the exception. A party must show that he has in fact been prejudiced by a ruling before he can make it a ground of complaint on appeal.
But independently of that consideration we are of opinion that, all the facts in the case being given, the jury were quite as capable as an expert of forming a correct opinion as to *45 whether it was dangerous to stand upon a wharf when a boat was approaching to take off freight or to make a landing. It certainly is not matter of science or technical skill to determine whether it be an act of common prudence for a man to stand upon a wharf which is proved to be strong and fit, and built for the express purpose of steamers stopping at and taking freight from them; and it does not require an expert to aid a jury in deciding whether any man, wharfinger or not, ought to anticipate that in effecting a landing in ordinary weather a steamer will demolish the timbers of a wharf at which it stops daily, and will thereby imperil the lives or limbs of those who may happen to be within two or three feet of the fender piles.
After all the testimony had been given the Court granted the eight several instructions asked by the plaintiff and refused the first, third, seventh and eighth, of the defendant, and granted the rest, with a modification of the fifth; which modification was admitted to be correct at the argument in this Court.
The proper forms of instructing a jury upon the question of negligence have been so often under review in this Court, as well as in the Appellate Courts of different States and the Supreme Court, that we are spared the necessity of detailed criticism. In the instructions which went to the jury, we think that the defendant had the benefit of every ruling to which he was entitled, and that the whole subject was fairly and fully put to the jury in its proper application to the facts in evidence.
In rejecting the third prayer of the defendant the Court was clearly right. After the plaintiff. has proved negligence on the defendant’s part he is entitled to rest, and the burden then falls on the defendant to prove want of ordinary care and prudence in the plaintiff, if he relies upon that as his defense.
The Court was right in rejecting the defendant’s seventh prayer, because it asked the Court to instruct the jury that for the defendant to put his foot between the piles of the *46 pier and the flooring of the pier, or- between one of the piles in front of the pier and the flooring, and to allow it to remain there while the boat wTas departing from the pier, was negligence in law, and that the plaintiff could not recover if such were his position. The question of negligence under such circumstances belonged exclusively to the jury.
The eighth prayer seems to have been framed with some view of presenting the proposition that if the plaintiff voluntarily assumed to perform some dangerous office, as the servant of the defendant, and while so acting sustained an injury, he was not entitled to recover; but he does not in his prayer suggest that the injury was a consequence of his so acting or that, by so acting, he placed himself in a position of danger to which he would' not otherwise have been exposed. The concurrence of two things is widely different from the relation of two things to each other as cause and effect. In another aspect of the prayer it may have been meant to convey the idea that if the plaintiff voluntarily and knowingly placed himself in a situation of danger, and by reason of so doing was injured, he cannot recover. But regarding the prayer in either way, it is so defective in structure, so obscure, and so calculated to mislead a jury, that the Court had no alternative but to reject it. Even were the prayer less objectionable in shape, there could hardly have been error in refusing it, as the Court, in the instructions which were granted, gave the jury all that was really necessary for them to judge properly of the testimony; and in cases of this class it is the better practice to abstain from attempts to multiply distinctions when there is no substantial variation of the principles involved.
We have carefully compared the general charge of the trial justice with the criticisms made upon it by counsel in argument; but we have been unable to find any just ground of exception, and no good purpose would be subserved by a detailed examination of the objections which were made.

We shall, then, for the reasons we have given, affirm the judgment.